IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **EDUARDO ALMEIDA** )<br>          Plaintiff, )<br>  )<br>**v.** )<br>  )<br>**TRADE-MARK INDUSTRIAL LLC,** )<br>  )<br>  )<br>          Defendant. ) | **No.** 1:21-cv-3115<br><br>**JURY DEMANDED** |

## COMPLAINT AT LAW

**NOW COMES** the Plaintiff, **EDUARDO ALMEIDA** by and through his attorneys, and for his Complaint against the Defendant, **TRADE-MARK INDUSTRIAL LLC** states:

### THE PARTIES

1. Plaintiff, **EDUARDO ALMEIDA**, was and is a resident of Illinois at all times relevant hereto.

2. **TRADE-MARK INDUSTRIAL LLC** is a Delaware corporation which is registered as a foreign limited liability company to conduct business in Indiana.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) since the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00 and is between citizens of different states.

4. Venue of this action in the United States District Court for the Southern District of Indiana, Indianapolis Division, is proper pursuant to 28 U.S.C. §1391 because the Defendant **TRADE-MARK INDUSTRIAL LLC** resides in and does business in, this district.

5. On April 19, 2010, **TRADE-MARK INDUSTRIAL LLC** applied for a Certificate of Authority to transact business in the State of Indiana.

6. On May 6, 2010, **TRADE-MARK INDUSTRIAL LLC** was granted a Certificate of Authority by the State of Indiana, Office of the Secretary of State, to transact business in the State of Indiana.

7. That **TRADE-MARK INDUSTRIAL LLC** is perpetual in duration.

8. That **TRADE-MARK INDUSTRIAL LLC** has a legally designated recipient for service of process in the State of Indiana.

9. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as doing business in Indiana.

10. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as a multi-trade contractor specializing in millwrighting, rigging, electrical, piping and sheet metal installations and repairs whose primary focus includes the Indiana market.

11. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as providing millwrighting and rigging across southern Indiana.

12. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as providing industrial pipping services across southern Indiana.

13. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as providing commercial electrical contracting across southern Indiana.

14. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as providing sheet metal and HVAC services across southern Indiana.

15. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as providing fabrication services across southern Indiana.

16. That **TRADE-MARK INDUSTRIAL LLC** advertises that its USA operations include a satellite office in Indiana.

17. That **TRADE-MARK INDUSTRIAL LLC** advertises and holds itself out as having a satellite site at Toyota Motor Manufacturing Indiana, Inc., (TMMI).

18. That **TRADE-MARK INDUSTRIAL LLC** advertises the name and Indiana based contact information for the project coordinator of the **TRADE-MARK INDUSTRIAL LLC** satellite site at Toyota Motor Manufacturing Indiana, Inc., (TMMI).

## FACTUAL ALLEGATIONS

19. That on, prior, and subsequent to January 6, 2020, **TRADE-MARK INDUSTRIAL LLC** by and through its agents, servants and/or employees, whether actual or apparent was an industrial, commercial and institutional multi-trade contractor.

20. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **RUSSELL MILLER** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

21. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **JEREMY SMITH** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

22. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **JUSTIN REED** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

23. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **E. H. SCOTT** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

24. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **JEFF HORTON** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

25. That on, prior, and subsequent to January 6, 2020 and at all times relevant hereto, **CHAD MANNS** was an agent, servant, and/or employee, whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL LLC.**

26. At all times relevant to this complaint, the agents, servants and/or employees, whether actual or apparent, of defendant **TRADE-MARK INDUSTRIAL LLC** acted within the scope of their agency, service, and/or employment.

27. That on and prior to January 6, 2020 and at all times relevant hereto **TRADE-MARK INDUSTRIAL LLC,** by and through its agents and employees, whether actual or apparent were installing a new track timbers for the incline railway tram at Kentucky American Water Company in Lexington, Kentucky.

28. That on and prior to January 6, 2020 and at all times relevant hereto **TRADE-MARK INDUSTRIAL LLC,** by and through its agents and employees, whether actual or apparent were installing new incline railway tram Kentucky American Water Company in Lexington, Kentucky.

29. That on and prior to January 6, 2020 and at all times relevant hereto **TRADE-MARK INDUSTRIAL LLC,** by and through its agents and employees, whether actual or apparent removed the overhead safety cage off the incline railway tram to work out the back of the incline railway tram.

30. On January 6, 2020, plaintiff **EDUARDO ALMEIDA** was working as a painting contractor at Kentucky American Water Company in Lexington, Kentucky.

31. At the aforementioned time and place, the plaintiff **EDUARDO ALMEIDA** was a passenger in the incline railway tram and intended to return to the main plant level at Kentucky American Water Company.

32. On January 6, 2020, **RUSSELL MILLER** an agent and/or employee whether actual or apparent of defendant **TRADE-MARK INDUSTRIAL, LLC** was the operator of the incline railway tram at Kentucky American Water in Lexington, Kentucky.

33. At the aforementioned time and place, **JEREMY SMITH, JUSTIN REED, E.H. SCOTT, JEFF HORTON** and **CHAD MANNS** agents and/or employees whether actual or apparent of defendant **TRADE-MARK INDUSTRIAL, LLC** were also passengers in the incline railway tram, which caused the total weight to exceed the capacity of the incline railway tram.

34. At the aforementioned time and place, the plaintiff **EDAURDO ALMEIDA** expressed concern that the total weight exceed the capacity of the incline railway tram and advised **RUSSELL MILLER** that he intended to exit the incline railway tram.

35. At the aforesaid time and place, the Plaintiff, **EDUARDO ALMEIDA** was a permitted and intend user of the aforesaid incline railway tram and at all times was in the exercise of care and caution for his own safety.

36. That on and prior to January 6, 2020 and at all times relevant hereto a start alarm was to be initiated prior moving the incline railway tram.

37. That on and prior to January 6, 2020 and at all times relevant hereto the normal capacity of the incline railway tram is six (6) persons or 1,200 pounds live load.

38. At the aforementioned time and place, as the plaintiff attempted to exit the incline railway tram, **RUSSELL MILLER**, as agent and/or employee whether actual or apparent of

5

Defendant **TRADE-MARK INDUSTRIAL, LLC** enabled tram motion causing the plaintiff **EDUARDO ALMEIDA** to strike his head on the overhead concrete canopy which caused him to bend backward resulting in severe and permanent injuries.

39. That the aforementioned time and place, a start alarm was not initiated prior to moving the incline railway tram.

40. That at the time **RUSSELL MILLER**, as agent and/or employee whether actual or apparent of Defendant **TRADE-MARK INDUSTRIAL, LLC** enabled tram motion, the overhead safety cage was neither in place nor properly secured to the incline railway tram.

## COUNT I

41. That the Plaintiff, **EDUARDO ALMEIDA** hereby re-alleges and incorporates paragraphs 1 through 40 of the Complaint as though fully set forth herein.

42. That on, prior, and subsequent to January 6, 2020, there existed a duty on the part of the Defendant, **TRADE-MARK INDUSTRIAL LLC**, by and through its agents, servants and/or employees, whether actual or apparent, to: (1) act in an ordinary careful and reasonable manner so as to avoid unnecessary harm or injury to the Plaintiff; and (2) follow all mandatory rules, procedures and regulations applicable to the incline railway tram at issue and other facts of this case.

43. In disregarding the aforementioned duty, the Defendant, **TRADE-MARK INDUSTRIAL LLC,** by and through its agents, servants, and/or employees whether actual or apparent was then and there guilty of one or more of the following careless and negligent acts or omissions:

    a. Improperly operated and controlled the incline railway tram so that as a direct and proximate result thereof, the Plaintiff was injured;

6

    b. Failed to observe safe operating procedures so that as a direct and proximate result thereof, the Plaintiff was injured;

    c. Transported passengers in the incline railway tram when the overhead safety cage was neither in place nor properly secured;

    d. Operated the incline railway tram when the Defendant knew or should have known in the exercise of reasonable care that the total weight exceeded the capacity of the incline railway tram;

    e. Failed to make a reasonable inspection of the incline railway tram prior to enabling tram motion when the Defendant knew or should have known in the exercise of reasonable care that said inspection was necessary to prevent injury to the Plaintiff; and/or

    f. Failed to initiate a start alarm prior to enabling tram motion when Defendant knew or should have known in the exercise of reasonable care that said warning was reasonably necessary to prevent injury to the Plaintiff.

44. As a direct and proximate result of one or more of the foregoing negligent acts or omissions of the Defendant, **TRADE-MARK INDUSTRIAL LLC** by and through its agents, servants and/or employees, whether actual or apparent, the Plaintiff, **EDUARDO ALMEIDA**, sustained severe and permanent injuries; was required to seek extensive medical and surgical consultations and treatments; suffered, and will continue to suffer, great pain, anguish, and physical suffering; has lost income and benefits of employment; and has expended, and will in the future expend, great sums of money in attempts to be healed and cured of his maladies.

**WHEREFORE**, the Plaintiff, **EDUARDO ALMEIDA** prays for judgment against the Defendant, **TRADE-MARK INDUSTRIAL LLC,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate him for his injuries, losses, and damages as hereinabove alleged, as well as all interest and costs of this action and all other just and proper relief.

                                                             Respectfully submitted,

                                                             _/s/ Beth Brown Nowak_
                                                             Beth Brown Nowak, Attorney for Plaintiffs,
                                                             Atty. No.:24108-64

KELLY LAW OFFICES LLC
1619 Junction Avenue
Schererville, IN 46375
Telephone: (219) 791-0606
Fax: (219) 791-0707
E-Mail: bbn@kelly-lawyers.com